UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL LEE,

      Plaintiff,     Case No. 12-cv-12763
                     HON. GERSHWIN A. DRAIN

vs.

DETROIT POLICE OFFICER SERGEANT ROY HARRIS, *et al.*,

      Defendants.

_____/

## ORDER GRANTING DEFENDANT OFFICERS' MOTION FOR SUMMARY JUDGMENT [#45] AND GRANTING DEFENDANT CITY OF DETROIT'S MOTION FOR SUMMARY JUDGMENT [#44] AND CANCELLING HEARING

### I. INTRODUCTION

On November 30, 2012, Plaintiff, April Lee, filed the instant 42 U.S.C. § 1983 action claiming Defendants, Detroit Police Officers Roy Harris, Jennifer Halfacer, James Tillerson, Lynn Moore, Kristine Zimmerman, Marcus Hill, Jeffery Wawrzynisk, Carmen Diaz, Charnita Purdue, Ronald Lockhart, and the City of Detroit, violated her First and Fourth Amendment rights by seizing her vehicle.

Presently before the Court is Defendant Officers and Defendant City's Motions for Summary Judgment pursuant to Fed. R. Civ. P. 56(c). This matter is fully briefed, and the Court concludes that oral argument will not aid in the resolution of this matter. Accordingly, the Court

1

will resolve the Defendants' Motions on the briefs submitted. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court grants both of Defendants' Motions for Summary Judgment.

## II. FACTUAL BACKGROUND

On July 15, 2010, Plaintiff, April Lee, cashed a check worth $500 at a Bank of America on Six Mile Road in the City of Detroit. Because she already had some money before this, she had more than $500 on her at this time. Plaintiff had a male passenger in the front seat, Brian Spooner, and her daughter in the back seat. While on her way home from the hair salon, she saw someone she knew in front of a house, and she pulled her car over to interact with him.

Plaintiff and Defendants disagree as to what happened next. Plaintiff said that her friend, Dejuan Hood, never reached the car, but was stopped when five police officers, three male officers and two female officers, jumped out of a "raid van" in the middle of the street and asked everyone for their identification. While getting her identification out of her pocket, Plaintiff accidentally pulled out an envelope with her money in it. Upon seeing the envelope, one of the officers told the other officers to take it. Once Plaintiff gave the officers her identification and the envelope, they brought her inside the police van and placed her in handcuffs. While in the police van, Plaintiff said that the officers told her to shut up when she tried to explain where she got the money, and the officers threatened to take her car and call child protective services if she did not cooperate. When the officers counted the money, they told her that it added up to $271 dollars. When Plaintiff tried to say that the number was incorrect, the officers repeated their previous threats. Finally, Plaintiff was given a ticket for loitering in a place of illegal operation

and a forfeiture form for the money that the officers took from her, and Plaintiff was allowed to leave, and she drove home.

Defendants provide a markedly different account of what happened on July 15, 2010. According to Defendants, when Mr. Hood reached the car, the officers observed a hand-to-hand narcotic transaction. When Mr. Hood saw the officers, he tossed something into the car and started to walk away. As a result of witnessing this behavior, the officers conducted an investigation. When they stopped Mr. Hood, the officers found marijuana on his person. He was ticketed with violation of the controlled substance code and was released. Upon arriving at Plaintiff's vehicle, the officers noticed a strong smell of marijuana coming from the vehicle. Mr. Spooner, the passenger in the car with Plaintiff, admitted to having marijuana, and a sandwich bag containing marijuana was found in his pocket. He was similarly charged with a violation of the controlled substance code. Plaintiff does not recall if she was searched. Because the officers observed the drug transaction and found marijuana inside her vehicle, the officers were going to confiscate her vehicle, but decided to delay the seizure to allow Plaintiff to bring her daughter home because it was a very warm day.

Once Plaintiff arrived at her home, she decided to make a complaint to the Detroit Police Department about her money that the officers took and that the amount they claimed to have taken was incorrect. Shortly after her conversation with the department, the same group of five officers showed up at Plaintiff's home and again asked for identification. Plaintiff said that the officers were angry about her complaint. One of the officers gave her a phone to speak to someone about the discrepancy with the amount of money that the officers seized, but she told that person that she did not care about the money anymore, and she only wanted the officers to leave her property. She said that the officers then told her that they were going to impound her

vehicle for being "hardheaded." They then took her lawnmower out of the back of Plaintiff's vehicle and gave her a bag left on the front seat and waited for a tow truck to come take the vehicle. Once the truck towed the vehicle away, the officers left.

According to Defendants, the vehicle was impounded because of the hand-to-hand drug transaction witnessed by the officers earlier. The officers claimed that the vehicle would have been taken during the prior occasion, but they did not want Plaintiff and her daughter to have to walk home in the heat, so they let Plaintiff drive the vehicle home and drove to her residence about forty-five minutes later to confiscate Plaintiff's vehicle.

Plaintiff took numerous steps to try to rectify the situation. She filed a formal complaint against the officers, alleging larceny for taking her money and recording the wrong amount, and and she received a letter in response stating that her claim for larceny would not be sustained, but the Detroit Police Department discovered violations of department policy. On November 9, 2010, Plaintiff appeared for a preliminary examination on the loitering charge. At the hearing, Plaintiff stipulated to probable cause, and the loitering charge was dismissed. Plaintiff's vehicle was later returned without damage and without an impoundment fee; however, Plaintiff was required to pay a $75 towing fee.

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 on June 22, 2012. She alleges that the defendants violated her First Amendment right to freedom of association by arresting her and giving her a citation for loitering when she was engaging in lawful activities with her friend, her First Amendment right to freedom of expression by retaliating against her after she filed a complaint with the Detroit Police Department, and her Fourth Amendment right to be protected from unreasonable seizures by unlawfully seizing her vehicle. Plaintiff also alleges various state

4

tort claims. She claims her reputation has been tarnished, forcing her to break her lease and move away from her neighbors because they believed her house to be a "drug house." Additionally, Plaintiff brings a claim against the City of Detroit for failure to adequately train and supervise its police officers. On April 20, 2013, Defendant police officers and Defendant City filed separate Motions for Summary Judgment, which are now before the Court.

### III. STANDARD OF REVIEW

Because these are Motions for Summary Judgment, the standard of review is such that the moving party must be entitled to win as a matter of law. Federal Rule of Civil Procedure 56(c) allows the court to reach such a conclusion "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court affirmed the use of summary judgment as an integral part of the fair and efficient administration of justice. The use of summary judgment is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

When evaluating a motion for summary judgment, the judge must construe all evidence and reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

(emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the moving party establishes by use of proper materials set forth in Rule 56(c) that there is no genuine issue of material fact and it is entitled to a judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-moving party. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

## IV. ANALYSIS

### A.     Defendant Officers's Motion for Summary Judgment

#### 1.     *Qualified Immunity*

Police officers often must make split-second, discretionary decisions while performing their duties. To protect their ability to make these decisions, the legal system grants the police a qualified immunity from lawsuit when performing discretionary functions. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902 (6th Cir. 1998) (citing *Pierson v. Ray*, 386 U.S. 547, 557 (1982)). This immunity is only overcome if Plaintiff can show that the officer violated a clearly established statutory or constitutional right and his actions were objectively unreasonable. *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This gives officers "ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

An officer's action is objectively unreasonable if a reasonable police officer would know that the action was unlawful through clearly established law. *See Anderson v. Creighton*, 483 U.S. 635 (1987). If the police have probable cause, then the action is lawful; however, lack of probable cause is not dispositive, it merely lends support to the idea that the action was objectively unreasonable. *See id.* If Defendants violated Plaintiff's constitutional rights, but a reasonable police officer would have thought there was probable cause, Defendants would be entitled to qualified immunity. *See id.*

Here Plaintiff alleges her Fourth Amendment right to protection against unreasonable seizures was violated by the Defendants. Plaintiff contends that the police lacked probable cause to seize her vehicle from her home.

The Fourth Amendment does not provide an absolute protection against all seizures—only unreasonable seizures. The governing standard for Fourth Amendment rights is whether the police officers had probable cause for the seizure. *See U.S. v. Place*, 462 U.S. 696, 702-03 (1983). Therefore, Defendants only violated Plaintiff's Fourth Amendment right if they seized her vehicle without probable cause.

Because Plaintiff stipulated to probable cause of the stop, investigation, and ordinance violation charge at the preliminary hearing, there was no violation of her Fourth Amendment right. By stipulating to probable cause, she effectively agreed that Defendants were acting lawfully when they stopped her vehicle and issued her the loitering citation. One of the consequences of that citation is that Plaintiff's vehicle would be impounded; therefore, Plaintiff's Fourth Amendment rights were not violated because Defendants' seizure of her vehicle was reasonable.

Although Plaintiff contends that her stipulation should only apply to the first stop in the street, not to the seizure at her home, this argument is not persuasive because the officers had the right to seize her vehicle during the initial stop. Probable cause to impound the vehicle does not disappear simply because the officers benevolently allow Plaintiff to drive home to bring her daughter out of the heat.

Therefore, because there was no violation of Plaintiff's Fourth Amendment right, Defendant Officers are entitled to qualified immunity and their Motion for Summary Judgment is granted with respect to Plaintiff's Fourth Amendment claim.

As to Plaintiff's First Amendment claims, Plaintiff failed to respond to Defendant Officers' arguments with respect to these claims. A non-moving party must respond to a motion for summary judgment with "significant probative evidence" to show "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the non-moving party fails to respond to a Motion for Summary Judgment, the Court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). After reviewing the evidence presented in the Motion for Summary Judgment, the Court, viewing the evidence in a light most favorable to the non-moving party, shall determine "whether the evidence presents a sufficient disagreement to require submission to a jury…." *Moore*, 8 F.3d at 340.

Plaintiff has failed to present any evidence demonstrating a genuine issue of fact exists as to her First Amendment claims. Plaintiff stipulated to probable cause, thus her freedom of association claim fails as a matter of law. Additionally, because Plaintiff stipulated to probable

8

cause, she effectively agreed that the officers had the right to seize her vehicle, thus any assertion that the Defendant officers retaliated against her for complaining is without merit. Defendant Officers are likewise entitled to judgment in their favor on Plaintiff's First Amendment claims.

**2.** *State Law Claims[1]*

Similarly, Defendants are entitled to judgment in their favor on Plaintiff's false imprisonment claim, *Moore v. City of Detroit*, 652 N.W.2d 688, 691 (Mich. Ct. App. 2002), malicious prosecution claim, *Alman v. Reed*, 703 F.3d 887 (6th Cir. 2013) (citing *Matthews v. Blue Cross & Blue Shield of Michigan*, 456 Mich. 365, 376-77 (Mich. 1997)), conversion claim, *Dep't of Agric. v. Appletree Mktg., L.L.C.*, 779 N.W.2d 237, 246 (Mich. 2010), and trespass claim, *Giddings v. Rogalewski*, 158 N.W. 951, 953 (Mich. 1916), because lack of probable cause or authority is a necessary element for each of those claims. Because Plaintiff stipulated to probable cause, she basically agreed that the actions Defendants took were within their authority. Because each of these claims requires that Defendants did not have either probable cause or the legal authority to act, Plaintiff's stipulation to probable cause necessarily defeats all of these claims.

Finally, Plaintiff's intentional infliction of emotional distress claim must be dismissed without evidence of severe emotional distress. Although intentional infliction of emotional distress has not yet been officially recognized by the Michigan Supreme Court, several Michigan appellate court cases have recognized the claim. *See Clarke v. K-Mart Corporation*, 495 N.W.2d 820 (Mich. Ct. App. 1992); *Sawabini v. Desenberg*, 372 N.W.2d 559 (Mich. Ct. App. 1985); *Warren v. June's Mobile Home Village*, 239 N.W.2d 380 (Mich. Ct. App. 1976). Plaintiff must

---

[1] Plaintiff voluntarily dismissed the assault and battery claim.

prove each of these elements in order to maintain an intentional infliction of emotional distress claim: (1) the defendant recklessly or intentionally (2) through extreme and outrageous conduct (3) caused (4) severe emotional distress. *Warren*, 239 N.W.2d at 382.

Plaintiff has failed to come forward with evidence she suffered "severe emotional distress," regardless of any culpability of Defendants. The standard for severe emotional distress is where the distress is so severe that no reasonable person could be expected to endure it. *Andrews v. Prudential Securities, Inc.*, 160 F.3d 304, 309 (6th Cir. 1998). This Court, quoting the restatement, has held that "a plaintiff is not entitled to recover damages for intentional infliction of emotional distress where she supplies no evidence of grief, depression, disruption of life style, or of treatment for anxiety or depression." *Hilden v. Hurley Medical Center*, 831 F. Supp. 2d 1024, 1047 (E.D. Mich. 2011), *aff'd*, 504 Fed. Appx. 408 (6th Cir. 2012).

Here, Plaintiff relies on her deposition testimony that she "[does not] trust the police" and she is "extra scared when they come around." *See* Defs.' Mot. for Summ. J., Ex. 4 at 17. She does not allege any other injury. She has not visited a doctor, and she has no plans to visit a doctor. This evidence is insufficient to establish a claim for intentional infliction of emotional distress.

Therefore, Defendant Officers' Motion for Summary Judgment is also granted with respect to Plaintiff's state law claims.

B.     **Defendant City's Motion for Summary Judgment**

1.     *Qualified Immunity*

Similar to the immunity granted to police officers, governmental agencies are afforded qualified immunity from tort suit when engaging in a governmental activity. A governmental agency is immune from suit under § 1983 unless the agency, through some official policy or custom, caused the injury. *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 694 (1978). A governmental municipality may not be sued under a *respondeat superior* theory. *Id.* at 691. Because Plaintiff failed to provide any evidence of the City's custom or policy sufficient to prevent immunity, the City is entitled to immunity from Plaintiff's § 1983 claim.

Plaintiff's main contention in her response brief is that the City tolerated a custom of constitutional rights violations by its police officers. Plaintiff correctly asserts that a policy or custom under *Monell* does not need to be written, and toleration of a custom can amount to a viable *Monell* claim. *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902. Therefore, if Plaintiff established a custom or policy through the City's previous actions or acquiescence, she could avoid immunity and proceed with the claim.

However, Plaintiff failed to provide any evidence of a custom or policy outside of the present case. More than a single instance of a practice is necessary to establish an unconstitutional custom or policy. *See Napier v. Jacobs*, 377 N.W.2d 879, 885 (Mich. Ct. App. 1985). Therefore, the City is entitled to immunity from Plaintiff's § 1983 claims and its Motion for Summary Judgment is granted with respect to these claims

**2.**  ***State Law Claims***

Plaintiff's state law claims against the city fail for the same reasons as those set forth in this Court's analysis of Defendant Officers' Motion for Summary Judgment. *See* § IV.2. Plaintiff stipulated to probable cause; thus, she cannot state viable claims of false imprisonment, *Moore v.*

11

*City of Detroit*, 652 N.W.2d 688, 691 (Mich. Ct. App. 2002), conversion, *Dep't of Agric. v. Appletree Mktg., L.L.C.*, 779 N.W.2d 237, 246 (Mich. 2010), malicious prosecution, *Alman v. Reed*, 703 F.3d 887 (6th Cir. 2013) (citing *Matthews v. Blue Cross & Blue Shield of Michigan*, 456 Mich. 365, 376-77 (Mich. 1997)), or trespass, *Giddings v. Rogalewski*, 158 N.W. 951, 953 (Mich. 1916), because these claims require lack of probable cause or lack of legal authority as an element.

Similarly, Plaintiff's intentional infliction of emotional distress fails as a matter of law without evidence of severe emotional distress as discussed *supra*. *See* § IV.2.

## V. CONCLUSION

Accordingly, for the reasons stated above, Defendant Officers' Motion for Summary Judgment [#45] is GRANTED and Defendant City of Detroit's Motion for Summary Judgment [#44] is GRANTED. This cause of action is dismissed with prejudice.

SO ORDERED.

Dated: June 26, 2013

/s/ Gershwin A. Drain_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE